**MORI ASSOCIATES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 10–298C.**

United States Court of Federal Claims.

Filed under seal: April 15, 2011.

Reissued: May 2, 2011.[1]

---

1. Because of the protective order in this case, the parties were given the opportunity to request redactions. They requested none. Accordingly, the order is reissued for publication with a minor, non-substantive correction.

573

Joseph G. Billings, Miles & Stockbridge P.C., Baltimore, Maryland, for plaintiff. Rita J. Piel, Miles & Stockbridge P.C., Baltimore, Maryland, Carol L. O'Riordan and Pamela J. Bethel, O'Riordan Bethel Law Firm, LLP, Washington, D.C., of counsel.

Dawn E. Goodman, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, all of Washington, D.C., for defendant. William Rayel, Commercial Litigation Branch, Civil Division, Department of Jus-

tice, Washington, D.C. and Mogbeyi Omatete, Office of General Counsel, Procurement, Fiscal and Information Law Branch, Department of Health and Human Services, Washington, D.C., of counsel.

## ORDER

VICTOR J. WOLSKI, Judge.

Pending before the Court is plaintiff's motion to supplement the administrative record, which plaintiff has narrowed to request the addition of just one sheet of paper. See Pl.'s Resp. (Apr. 5, 2011) at 3. The motion concerns the administrative record pertaining to the decision of the National Institutes of Health's ("NIH") November 29, 2010 decision to cancel the procurement that was the subject of this lawsuit. See Admin. R. ("AR") at 1. Plaintiff, MORI Associates, Inc. ("MORI"), filed a Supplemental Complaint on December 22, 2010, adding allegations and counts relating to the cancellation, to the existing allegations and counts concerning the procurement process, the evaluation of proposals, and proposed corrective action.

The decision to cancel the procurement was based on projections that the National Institute of Diabetes and Digestive and Kidney Diseases ("NIDDK") was to have augmented its staff, by the end of 2010, to enable it to perform many of the functions of the procurement in-house. AR at 5. The decision also cited an analysis of the "minimum" cost savings that were expected by converting eleven contract support positions to government employees. Id. The administrative record submitted by the government initially included the posted cancellation, AR at 1–2; a request for cancellation sent by the Director of NIDDK to the Contracting Officer, AR at 3–4; the Contracting Officer's memorandum to the file accepting the cancellation request with a spreadsheet depicting the cost savings calculation, AR at 5–6; a March 4, 2009 memorandum from the President concerning government contracting, AR at 7–9; and the March 2009 invoices for MORI employees performing the predecessor contract. AR at 10–16.

Plaintiff then filed its motion to supplement the administrative record, arguing among other things that the record appeared to be missing documents supporting the projection of NIDDK employees available by year's end; the matching of MORI positions with government labor categories; and the calculation of expected savings. *See* Pl.'s Mot. to Supp. Admin. R. at 3–8. The government responded by proposing a Supplemental Administrative Record containing the position descriptions and authorizations for additional NIDDK employees, AR at 18–45, 59–79, and documents that NIDDK apparently "relied upon" or "reviewed when creating the cost comparison chart." Def.'s Resp. to Pl.'s Mot. to Supp. Admin. R. ("Def.'s Resp.") at 3.[2] The latter were the January 2009 federal employee salary table for the Washington, D.C.–area, AR at 17, *see* Def.'s Resp. at 11, and the General Services Administration ("GSA") Federal Supply Schedule ("FSS") contracts of three contractors (but not MORI). AR at 46–58, *see* Def.'s Resp. at 10–11. Plaintiff did not object to this Supplemental Administrative Record, *see* Tr. (Apr. 5, 2011) ("Tr.") at 37.

After it was clarified during the argument on the motion to supplement that the vast majority of documents that plaintiff identified in its motion either do not exist or were not considered by NIDDK when it made its cancellation decision, *see id.* at 37–38, plaintiff was left with just two documents it wanted to add to the administrative record: its own GSA FSS contract, and a page from its final proposal revision for the cancelled procurement showing the discounts it was offering relative to its GSA FSS contract prices.[3] In light of the government's representation that NIDDK did not consider MORI's FSS contract in compiling the cost comparison chart, MORI has narrowed its request to just its proposed pricing for the cancelled procurement. Pl.'s Resp. (Apr. 5, 2011) at 3.

It cannot be denied that MORI's final proposal revision was known to the Contracting Officer for the cancelled procurement, as she made the decision to award the contract to another offeror in 2009. *See* Miller Decl., ¶ 6, App. 3 to Def.'s Mot. to Dismiss. Thus, this proposal, including MORI's proposed prices, is part of the administrative record concerning the procurement. The Contracting Officer's decision to cancel the procurement cited an analysis of cost savings as support for the decision. *See* AR at 5. The government argues that the analysis was performed "in early 2009," following the March 4, 2009 issuance of the President's memorandum concerning government contracting. Def.'s Resp. at 7. The request for cancellation from NIDDK's Director states that "[i]n light of [the President's] memorandum, NIDDK reviewed its balance of insourcing and outsourcing in the information technology area," and that "[a]n analysis of expenditures showed that NIDDK could realize significant savings if it converted contract support positions to Federal employees." AR at 3. While perhaps it can be inferred from this document that the analysis was performed soon after the President's memorandum was issued, nothing in the administrative record has been identified establishing the exact date of the cost comparison chart. In any event, the government maintains that the cost savings expected from insourcing were calculated in early 2009, presumably prior to the July 29, 2009 submission of MORI's final proposal revision. *See* Supp. Compl. ¶ 146. These data, and not the prices offered by MORI or the former awardee, were apparently the basis of the cost savings estimate that was cited in the November 23, 2010 cancellation decision.

In its Supplemental Complaint, MORI alleges that the cost savings calculations were erroneous, arbitrary, and violated OMB Circular A–76, because the calculations ignored the costs from its final proposal revi-

---

2. It is not clear to the Court why this second category of documents was omitted from the administrative record in the first place, since the cost savings chart was cited by and attached to the Contracting Officer's cancellation decision. *See* AR at 5–6. The government states, without support, that it "do[es] not believe" that "the

agency's underlying cost comparison analysis is reviewable by this Court." Def.'s Resp. at 6.

3. The latter was attached as an exhibit to an earlier filed document in this case. *See* Ex. 3 to Pl.'s Opp. to Def.'s Supp. Mot. to Dismiss (docket no. 32–1 at 4).

sion. *See id.* ¶¶ 164, 166, 187–92. The government concedes that these costs were ignored, and wants the Court to ignore them as well. But under these circumstances, in which a Contracting Officer justified a decision by citing cost savings calculated perhaps more than one and one-half years earlier, when she was aware of more recent cost data in her procurement file, the Court concludes that "supplementation of the record [is] necessary in order not 'to frustrate effective judicial review.'" *Axiom Res. Mgmt., Inc. v. United States,* 564 F.3d 1374, 1381 (Fed.Cir. 2009) (quoting *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). In reviewing bid protests, a court must look to see if an agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). And in doing so, "[i]t is well established that the administrative record may be supplemented when the agency allegedly failed to consider information relevant to its final decision." *Diversified Maint. Sys., Inc. v. United States,* 93 Fed.Cl. 794, 801 (2010) (collecting cases). Indeed, relevant evidence that was ignored may normally be a prime example of "relevant information that by its very nature would not be found in an agency record." *Orion Int'l Techs. v. United States,* 60 Fed.Cl. 338, 343 (2004). But in this case, the information is contained in the agency record concerning the very procurement the cancellation of which is being challenged—so the Court does not consider this a supplementation so much as a completion. MORI's motion to complete the administrative record by adding the pricing page from its final proposal revision is, accordingly, **GRANTED.**

**IT IS SO ORDERED.**