# In the United States Court of Federal Claims

No. 17-934C

(Filed March 31, 2021)

```
* * * * * * * * * * * * * * * * *     *
                                      *
                                      *
                                      *
MAIL TRANSPORTATION, INC.,            *
et al.,                               *
                                      *
            Plaintiffs,               *
                                      *
       v.                             *
                                      *
THE UNITED STATES,                    *
                                      *
            Defendant,                *
                                      *
       and                            *
                                      *
AMERICAN POSTAL WORKERS               *
UNION, AFL-CIO,                       *
                                      *
            Defendant-Intervenor.     *
                                      *
* * * * * * * * * * * * * * * * *     *
```

*David P. Hendel*, Culhane Meadows PLLC, of Washington D.C., for plaintiffs.

*Russell J. Upton*, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., for defendant. *Redding C. Cates*, United States Postal Service, Washington, D.C., of counsel.

*George M. Chuzi*, Kalijarvi, Chuzi, Newman & Fitch, PC, of Washington, D.C., for defendant-intervenor. *Michael T. Anderson*, Murphy Anderson PLLC, of Washington, D.C., of counsel.

## <u>ORDER</u>

WOLSKI, Senior Judge.

This is an atypical bid protest in which plaintiffs, twenty private mail transportation companies, challenge the United States Postal Service's (USPS or Postal Service) decision to insource certain of the transportation services that

plaintiffs provide, or recently provided, to USPS. After the Court held the hearing on the motions for judgment on the administrative record, plaintiffs filed two motions to supplement the administrative record --- the second and third to have been submitted by plaintiffs in this matter.[1] Pls.' Second Mot. Suppl. Admin. R. (2nd Mot.), ECF No. 81; Pls.' Mot Suppl. Admin. R. Concerning PVS Performance (3rd Mot.), ECF No. 92. The second motion to supplement the record was accompanied by a supplemental brief supporting the plaintiffs' motion for judgment. Oppositions, and responsive supplemental briefing from defendant and defendant-intervenor American Postal Workers Union, AFL-CIO (Union), have also been received, and plaintiffs have filed a reply paper. For the reasons discussed below, the second and third motions to supplement the administrative record are **DENIED**.

The Court also resolves two additional matters in this order. First, after prompting from the Court, plaintiffs filed a fourth motion to supplement the administrative record to add declarations executed by officers and owners of the plaintiff companies and the head of the National Star Route Contractors Association (Star Route Association). Pls.' Third Mot. Suppl. Admin. R. (4th Mot.), ECF No. 104 at 1.[2] The declarations were already part of the court record but not the administrative record, as they were attached to submissions filed earlier in this case---such as the motion for a preliminary injunction or plaintiffs' motion for judgment on the administrative record. Although many of these declarations were cited in plaintiffs' merits arguments, *see* Pls.' Mot. for J. on Admin. R., ECF No. 66 at 27–30, plaintiffs did not previously move for their addition to the administrative record, *see* Pls.' Reply to Def.'s Resp. to Suppl. Br., ECF No. 91 at 6 n.2. Second, the Court addresses defendant's contention that the expiration of certain of plaintiffs' contracts moots their claims with respect to the routes that were the subject of those contracts. *See* Def.'s Suppl. Br., ECF No. 115, at 3–6. As discussed below, plaintiffs' fourth motion to supplement the administrative record is **GRANTED-IN-PART** and **DENIED-IN-PART**, and the Court finds that plaintiffs' claims are not moot.

**The Second and Third Motions to Supplement the Administrative Record**

The Court turns first to the second and third motions to supplement the administrative record. Under the Federal Circuit's decision in *Axiom Resource Management, Inc. v. United States,* 564 F.3d 1374, 1380 (Fed. Cir. 2009),

---

[1] The initial motion to supplement the administrative record was granted-in-part and denied-in-part. *See* Order (Aug. 11, 2017) at 1–2.

[2] The motion was mistakenly labelled as plaintiffs' *third* such motion. *See* 4th Mot. at 1.

supplementation of the record is appropriate only when it is necessary for effective judicial review. That standard is plainly not met by the materials plaintiffs seek to add to the record in their second motion to supplement. The motion concerns a series of emails between various Postal Service personnel about the administrative process for terminating a contract held by one of the plaintiffs, and schedule information about a certain defunct Highway Contract Route (HCR). 2nd Mot. at 1. The defunct route, HCR 480M4, was neither one of the original 110 routes designated for conversion as a result of the arbitration process, *see* Admin. R. (AR) 5549–52, nor was it on the final list of routes to be converted, *see* AR 1584–86. In any event, supplementation of the record to add its schedule information, *see* Ex. C to 2nd Mot., cannot remotely be considered necessary, for this information is already contained in the administrative record, *see* AR 5468–69.

The emails show a September 2017 discussion between USPS employees which was precipitated by the erroneous instruction to prepare HCR 480M4 for termination and conversion to Postal Vehicle Service (PVS). *See* Ex. A to 2nd Mot. at 7–9. The employees who were asked to process this instruction determined that the route was terminated when the contract ended on January 31, 2017, with two of its trips added to HCR 48067 and the other two added to HCR 480L9. *Id.* at 4–5. One of the employees suggested that what was needed was to remove the four transferred trips and terminate those. *Id.* at 3. But she was subsequently informed that HCR 48067, a contract at the time being performed by plaintiff Corbin Trucking, was to be converted in its entirety, as "the union agreed to changing 48067 to PVS." *Id.* at 2. In reaction, another USPS employee complained that the contractor had done the Postal Service a favor by accepting one of the HCR 480M4 round trips, and that the Union was getting ten of the contractor's other trips when only four trips were associated with HCR 480M4. *Id.*

Plaintiffs argue that these emails should be added to the administrative record, because they allegedly show the arbitrary process by which HCR 48067 was substituted for the much smaller HCR 480M4, upon Union request. *See* 2nd Mot. at 1–4. But a close review of those emails, and of the existing administrative record, shows that the emails reveal nothing of the actual decision-making process. These emails at most show the mechanics of implementing the decision being challenged, which was finalized months earlier---back in June 2017. *See* AR 1584–86. And plaintiffs' argument concerning the lack of comparability of HCR 480M4 and HCR 48067, with the latter having "double the driver hours" of the former, 2nd Mot. at 3, does not need the emails for demonstration, *see* AR 5314–15 (HCR 48067 Schedule Information), 5468–69 (HCR 480M4 Schedule Information).

It is not clear to the Court why plaintiffs stress that HCR 48067 was not selected as a replacement for one of the *original* 110 routes on the arbitration list, 2nd Mot. at 1–2, when the arbitrator's award clearly provided that "[b]y agreement, the parties may substitute other route(s) to be converted to PVS service pursuant to

this order based on particular circumstances." AR 1580. That the substitution process took many steps hardly seems objectionable, and the presence of the Union's agreement was necessary, not nefarious. The administrative record indicates that as of December 12, 2016, three of the original routes, located in Texas, were dropped from the conversion list because of long layovers. *See* AR 5556–57 (HCR 75094, 76067, and 762AA). These three routes had annual hours totaling 14,944. *See id.* At the same time, HCR 750U0, also in Texas, was added to the list, with 4,266 annual hours and 4 schedules. AR 5560. On January 25, 2017, it appears that the Union's request that HCR 480M4 be converted to PVS was accepted by the Postal Service. AR 5553. By April 14, 2017, a recounting of the negotiations between USPS and the Union shows that the latter requested that the Michigan HCR 480M4 replace HCR 750U0. AR 5563. The new replacement consisted of two schedules (or four trips) and 1,263 annual hours. *Id.* at 5563, 5570. As of April 21, 2017, HCR 480M4 was still on the conversion list, *see* AR 5576. But as of May 18, 2017, the Michigan HCR 48067 and its 3,119 annual hours appears on the list, seemingly in place of HCR 480M4---as it is identified as route 99 on the list. *Compare* AR 3346 (showing HCR 48067 as route 99) *with* AR 5576 (showing HCR 480M4 as route 99).[3]

Thus, the administrative record shows that HCR 48067 took the place of HCR 480M4, which was itself a substitute for replacement route HCR 750U0. The number of trips and annual hours for each of the three are also in the administrative record. *See* AR 5314–15, 5468–69, 5560. The only additional information contained in the emails is that HCR 480M4 had been terminated on January 31, 2017. That may explain why HCR 480M4 could not be converted to PVS, but it is not relevant to the question of the lawfulness or arbitrariness of converting other routes, which is the issue raised in this bid protest. The emails post-date the challenged decision, do not reflect the reasoning process of the officials involved in that decision, and cannot be necessary for effective judicial review. *See Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380.

In the third motion to supplement the administrative record plaintiffs seek to add a declaration from the owner of one of the plaintiff firms, Lori Vonwald of Stingray Distributing, Inc. 3rd Mot. at 1. In that declaration, Ms. Vonwald said that mail was being processed and delivered more slowly on one of the routes, HCR 92012, after it had been converted to PVS. Third Decl. of Lori Vonwald (3rd Vonwald Decl.), ECF No. 92-1, ¶ 2. She explained that this is because the contractor used two trucks per trip, a practice known as "dual head-out," which is not a PVS practice. *Id.* ¶¶ 2, 4–8. Plaintiffs argue that the declaration shows that

---

[3] Two other swaps were made at this time: HCR 98337 for HCR 983AT, and HCR 197M6 for HCR 19446. *Compare* AR 5574 (route 8), 5575 (route 49) *with* AR 3346 (route 49), 3347 (route 8).

USPS did not properly consider whether PVS transportation "best serves the public interest" as required by 39 U.S.C. § 5005(c), and may be added to the record based on precedents allowing supplementation when post-decisional information shows that false predictions or factual inaccuracies underly the decision. 3rd Mot. at 2–4 (citing, *inter alia*, *NCL Logistics Co. v. United States*, 109 Fed. Cl. 596, 612 (2103); *Afghan Am. Servs. Corp. v. United States*, 106 Fed. Cl. 714, 724–25 (2012); *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366 (2009)). The Court is not persuaded that the requested supplementation is justified by those precedents, which involved such circumstances as the correction of clerical errors in an administrative record, *AshBritt*, 87 Fed. Cl. at 366, or a contracting officer basing responsibility decisions on a decision by another official that was subsequently revised, *NCL Logistics*, 109 Fed. Cl. at 611–12, and on a proposed debarment that was ultimately decided in the contractor's favor, *Afghan Am. Army Servs.*, 106 Fed. Cl. at 724–25.[4]

The third declaration from Ms. Vonwald is not offered to correct a factual inaccuracy in the administrative record, or to show that the Postal Service relied on an outdated decision by another government official in reaching its decision. Plaintiffs contend that this document is necessary for effective judicial review because it shows the Postal Service failed to consider the impact "on mail processing and delivery" of converting routes to PVS. 3rd Mot. at 2. But instead of identifying any specific predictions that the declaration purportedly contradicts, plaintiffs instead refer, without citation, to "generic post-hoc statements" of USPS. *Id.* There is nothing in the Third Vonwald Declaration which casts any doubt on what the Postal Service claims to have done in the process of selecting HCR routes for conversion to PVS. It simply states that she was told of "instances" of later delivery of mail because of transportation delays, and speculates about other potential delays. 3rd. Vonwald Decl. ¶¶ 5–8. The document has no connection to the USPS decision being challenged and cannot be added to the administrative record.

---

[4] Plaintiffs also cite two persuasive precedents from other Circuits, in which the Environmental Protection Agency was permitted the use of post-decisional facts to confirm predictions it made regarding the impact of challenged regulations. *See* 3rd Mot. at 4 (citing *Am. Petroleum Inst. v. EPA*, 540 F.2d 1023, 1034 (10th Cir. 1976); *Amoco Oil Co. v. EPA*, 501 F.2d 722, 729 n.10 (D.C. Cir. 1974)). But plaintiffs have not identified any predictions in the administrative record as to the relative speed of transporting mail along HCR 92012 by PVS as compared to the contractor. Moreover, the Court is not persuaded that this approach, adopted because of the "forward-looking" nature of rulemaking, *Amoco Oil Co.*, 501 F.2d at 729 n.10, is appropriate for most bid protests.

**The Fourth Motion to Supplement the Administrative Record**

In their fourth motion to supplement the administrative record, plaintiffs seek to add to the administrative record thirty declarations from owners and officers of the plaintiff firms, and a declaration from the head of the Star Route Association. *See* 4th Mot. at 1–2 n.1. Most of these were filed in connection with motions for preliminary injunctive relief that were either denied, *see Mail Transportation, Inc. v. United States*, 133 Fed. Cl. 413, 416–17 (2017), or withdrawn, *see* Order (Sept. 29, 2017), ECF No. 89. *See* ECF No. 3 at 43–255; ECF No. 33-1 through -4; ECF No. 83-1. All thirty-one declarations are already part of the court record, and as such can be considered for purposes of determining prospective relief, but not the merits of the challenge to the procurement decision. *See, e.g., CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 483–84 (2013); *E.W., Inc. v. United States*, 100 Fed. Cl. 53, 57–58 (2011); *PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 5 (2009). To be considered in the analysis of the propriety of the Postal Service's insourcing decision, these declarations, or portions thereof, must meet the aforementioned *Axiom* standard for supplementing the administrative record. *See Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380.[5] Thus, plaintiffs must show that consideration of the information in these declarations is "necessary in order not to frustrate effective judicial review." *Id.* at 1381 (cleaned up).

To decide whether effective judicial review requires the information submitted by the plaintiffs, the Court must consider the atypical circumstance of this protest. The decision under challenge in this case is the Postal Service's determination to insource 110 mail transportation routes, *see* AR 1584–86, 3344–47, following an arbitrator's award requiring conversion of an initial list of such routes, for a four-year period. AR 1581. The arbitrator allowed that "[b]y agreement, the parties [i.e., the Postal Service and the Union] may substitute other route(s) to be converted to PVS service pursuant to this order based on particular circumstances." AR 1581. The plaintiffs held contracts to transport mail along thirty-three of these routes, *see* 2d. Am. Compl. ¶ 11, thirteen from the group at issue in the arbitration proceedings, *see* AR 5549–52, and twenty that were subsequent substitutions, *see* AR 1584–86.

In memoranda to file dated the day before the administrative record was filed, two Postal Service officials described the process they followed to replace some

---

[5] This is so, although the Supreme Court apparently misread the legislative history when it limited reviews of informal agency decisions to information in an administrative record. *See E.W.*, 100 Fed. Cl. at 56 (citing *Gulf Group Inc. v. United States*, 61 Fed. Cl. 338, 350 n.25 (2004); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 419–20 (1971)).

routes with others. AR 1652–56. Using HCR Schedule Information documents, they "determined that many of the HCRs were not suitable to conversion to PVS based on certain features of the routes that would make conversion especially costly," focusing in particular on: 1) routes with a trip exceeding eight hours; 2) routes with a layover exceeding one hour; 3) routes serving a facility with no existing PVS operations; and 4) routes with "dead head trips" in which no cargo is carried. AR 1652–53. The first two of these considerations were identified as having the "primary features" making PVS more costly than HCR performance. AR 1652. Other than looking for the four listed features, USPS believed "[i]t was not feasible to determine whether any of the other available 14,000 HCRs was cheaper to convert, as that analysis would require significant time and resources to perform." AR 1653.

After the Postal Service identified HCRs on the initial list containing any of the four costly features, it apparently tasked management in the vicinity of each such route "to identify an alternative route that had roughly the same number of hours as the substituted route but did not have the features that would make the route unsuitable for conversion to PVS." *Id.* The Union agreed to most of the proposed substitutions, which constituted the majority of the routes on the final list for conversion. AR 1654, 1656.

After the Court partially granted plaintiffs' first motion to supplement the administrative record, Order (Aug. 11, 2017), ECF No. 61 at 1–2, the Postal Service filed a second amended administrative record, which included three new declarations explaining the selection process. *See* AR 5010–19 (Raney Decl.), 5580–83 (Dean Decl.), 5601–04 (Wagstaff Decl.). Among the new information were spreadsheets and email exchanges indicating which of the four costly features were identified for individual routes from the initial list as well as for some proposed substitutes. AR 5553–79, 5585–86, 5598–600. The Postal Service officials who located these documents described them as "draft documents leading toward a final list" which, they opined, were "not a concrete step in the determinative process" and "were not required to be maintained" by USPS. Raney Decl. ¶ 30, AR 5018; Dean Decl. ¶ 8, AR 5582. One of the USPS declarants reiterated that in selecting replacement routes for those containing one of the four costly features, he "did not expect that any one of the HCRs that did not have any of the above [costly] features would be cheaper to convert than would be any other lacking those features." Raney Decl. ¶ 24, AR 5015; *see also* AR 1653.

The plaintiffs maintain that the process used by USPS failed to satisfy the statutory requirement that in choosing between PVS and contract service the Postal Service "shall use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service under each mode." 39 U.S.C. § 5505(c); *see* Pls.' Mot. for J. on Admin. R., ECF No. 66 at 14–30. To support that argument, they seek to add to the administrative record

information, contained in declarations from plaintiffs' owners and officers, falling in two general categories:  information showing the presence of some of the four costly features identified by USPS in HCRs that were nevertheless converted to PVS, 4th Mot. at 4; and information concerning other considerations that allegedly bear on the mode of transporting mail that best serves the public interest, *id.* at 4–5.[6]

Under these circumstances, the first category of information clearly meets the *Axiom* standard.  The Postal Service apparently did not create or employ any formal decision documents in the process of selecting the HCRs for conversion, but instead described the process after-the-fact.  *See* AR 1652–56, 5010–19, 5580–83, 5601–04.  It reluctantly produced some documents showing inchoate steps in the identification of contract routes containing the four features which make conversion to PVS unsuitable, *see* Raney Decl. ¶ 30, AR 5017–18;  Dean Decl. ¶¶ 8–10, AR 5581–82,  but the primary support for these determinations rests in the raw material---more than 1,500 pages of route schedule information that were apparently reviewed to identify the presence of these features, *see* AR 5020–547, 1657–2689.  The determination that a route lacked any of the unsuitable features seems, at best, implicit in the presence of that route on the final conversion list.

But officers and owners of nine of the plaintiff companies have themselves identified the presence of these unsuitable features in fourteen of the routes selected for conversion.  Concerning three of the four features, the precise trips, as shown on the schedule information, exhibiting these features are identified.  *See*, *e.g.*, Supp'l Decl. of Eugene Nishimura, EFC No. 71-7, ¶ 3 (discussing a layover in excess of one hour during a trip for HCR 967L1); AR 1972 (showing schedule information for trips 12 and 17).[7]  The government and intervenor oppose the request to supplement the administrative record, arguing that the declarations contain merely opinions disagreeing with the Postal Service's analysis.  U.S.' Resp. in Opp'n to Pls.' 4th Mot., ECF No. 106 at 3–4; Intervenor Resp. to Pls.' [4th] Mot., ECF No. 105 at 1.  But regarding the four features USPS claims to have used to

---

[6]  As the burden to justify supplementation falls upon the party requesting it, the Court will only consider the information in the specific declarations and paragraphs discussed in plaintiffs' motion and must deny their request concerning the remaining declarations or portions thereof.

[7]  The one unsuitable feature which is not, presumably, depicted on the face of the schedule information is the lack of existing PVS operations, which was based on USPS officials' knowledge of operations at the various facilities.  *See* Raney Decl. ¶ 20, AR 5013–14.  Plaintiffs' statements concerning this feature may be added to the record as "tacit knowledge possessed by offeror and agency personnel" or information "generally known in an industry or discipline."  *E.W.*, 100 Fed. Cl. at 57.

determine the routes to convert, the declarations are identifying and explaining facts in the administrative record, not offering opinions. The plaintiffs maintain that the Postal Service did not consistently identify the presence of the unsuitable features, and this concerns an objective element of the Postal Service's analysis and conclusions, which can the basis for finding a procurement decision to be arbitrary. *See USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 462 (2010) (explaining bid protest review "involves verifying that objective elements contained in the agency's analysis . . . correspond to the evidence in the record") (citations omitted).

Given the lack of any formal decision documents for the selection process, effective review of this protest ground would be frustrated if the Court were forced to conduct a green-eyeshade review of every trip entry in the 1,561 pages of schedule information, hunting for eight-hour-plus trips, one-hour-plus layovers, and dead head trips. Nor, given the number of HCRs at issue and the need to translate the information contained in the schedules to show the presence of the unsuitable features, can this be a task for plaintiffs' counsel to perform in the first instance.[8] Because this information is nearly inscrutable without the assistance of plaintiffs' owners and officers, who are in the position to understand not just their mail transportation operations but also the meaning of the trip schedule data, the portions of the declarations identifying the unsuitable features qualify for inclusion in the administrative record as "tacit knowledge possessed by offeror and agency personnel of a highly technical and complex nature, requiring explication via affidavits or expert testimony." *E.W.*, 100 Fed. Cl. at 57 (citations omitted); *see also Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 52, 63 (2009) (finding "the enormous amount of information presented" made supplementation "necessary for a full and complete understanding of the issues") (internal citations and quotations omitted); *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 242 (2016) (finding supplementation necessary due to the "highly technical nature" of some protest issues). Absent this information, effective judicial review is frustrated. *See Axiom*, 564 F.3d at 1380. Accordingly, the identified portions of the following declarations shall be added to the administrative record:

- Decl. of Lori Vonwald, EFC No. 71-2, ¶ 18 (discussing dead head trips on HCR 926L1).

---

[8] The only document in the record which gives examples showing how schedule information can be used to identify the three trip-related features is the Wagstaff declaration. *See* Wagstaff Decl. ¶¶ 5–7, AR 5602. As this responded to the first motion to supplement the administrative record, it addressed the one example provided by plaintiffs at that time. *See id.* ¶¶ 8–12, AR 5602–04; Pls.' Reply in Supp. of Mot. to Suppl. AR, ECF No. 58 at 3 n.1.

- Supp'l Decl. of Alan Gotta, EFC No. 71-3, ¶ 3 (noting a layover in excess of one hour in HCR 92350), ¶ 4 (discussing a dead head trip that occurs during the month of December for HCR 92350).[9]
- Supp'l Decl. of George A. Taylor, EFC No. 71-4, ¶ 5 (discussing dead head trips under HCR 48018).
- Supp'l Decl. of Eugene Nishimura, EFC No. 71-7, ¶ 3 (discussing a layover in excess of one hour during a trip for HCR 967L1).
- Supp'l Decl. of Frederick S. Riceputo, EFC No. 71-8, ¶ 3 (discussing a trip in excess of 8 hours for HCR 331N3), ¶ 4 (noting a layover in excess of 1 hour for HCR 33042),[10] ¶¶ 5–6 (discussing lack of existing PVS operations for HCR 33430, 33443).
- Supp'l Decl. of Nola Holton, EFC No. 71-12, ¶ 6 (noting that there is a layover of more than 1 hour on a trip for HCR 890L0), ¶8 (describing a layover of more than an hour on certain limited trips for HCR 89042).
- Supp'l Decl. of Yung Lee, ECF No. 71-13, ¶ 3 (discussing a layover in excess of one hour on a trip for HCR 92352).
- Supp'l Decl. of Walter B. Adams, 71-14, ¶ 3 (observing that trips in HCR 194L4 have deadhead trips).
- Supp'l Decl. of Greg Causley, ECF No. 3 at 221, ¶ 26(b) (discussing lack of existing PVS operations for HCR 48162).

The second category of information which plaintiffs want added to the administrative record is more problematic. Plaintiffs maintain that this information concerns "specific issues that *should have been* considered in determining which mode of transportation best serves the public interest, due consideration being given to cost." 4th Mot. at 4. On the one hand, an important aspect of a matter that an agency entirely failed to consider, *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983), may invariably involve "relevant information that by its very nature would not be found in an agency record." *Orion Intl. Techs. v. United States*, 60 Fed. Cl. 338, 343 (2004); *see, e.g.*, *MORI Assocs., Inc. v. United States*, 98 Fed. Cl. 572, 575 (2011); *Diversified Maint. Sys., Inc. v. United States*, 93 Fed. Cl. 794, 801 (2010) (collecting cases); *Allied Tech. Grp., Inc. v. United States*, 92 Fed. Cl. 226, 232 (2010) (supplementing record with documents which "probably should have been reviewed by agency in making its award decision"). On the other hand, a bid protest is not an occasion to

---

[9] The Court notes that the copy of this declaration that accompanied plaintiffs' motion for judgment was unsigned and expects that plaintiffs will expeditiously file the signed version.

[10] This declaration contains two paragraphs assigned the number four. The material to be added is in the second of these.

second-guess the judgment of agencies, and thus such "important aspect[s] of the problem" presented to agencies are usually identified by the agency itself, in setting the requirements of a procurement, *see Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375–76 (Fed. Cir. 2009), or statutorily by Congress, *see State of N.C. Bus. Enters. Program v. United States*, 110 Fed. Cl. 363–64 (2013); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 344–45 (2012).

Of course, in an atypical protest such as this one, where there is no solicitation or formal decision document in the administrative record, supplementation is more likely to be necessary to allow for effective judicial review. *See Global Computer Enters.*, 88 Fed. Cl. at 62–63 & n.14. And the "important aspect" that was entirely ignored may frequently be self-evident from the circumstances of the procurement decision at issue. *See, e.g.*, *ARxIUM, Inc. v. United States*, 136 Fed. Cl. 188, 200–04 (2018) (finding important aspects ignored when corrective action altered the meaning of requirements); *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 385–86 (2013) (recognizing factors that should be considered in automatic stay override cases); *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 544 (2011) (explaining that an important consideration for a procurement decision "may be apparent from the circumstances of the procurement"). Here, plaintiffs maintain that the statutory requirement that due consideration be given to cost in making mail transportation decisions, *see* 39 U.S.C. § 5505(c), means that various aspects of their operations that may translate into cost savings when routes are performed by contractors---including such practices as not paying for breaks, not charging for loading and unloading, efficiently combining shifts and routes, and using specialized equipment, 4th Mot. at 4–5---had to have been considered for USPS to rationally decide which routes to convert to PVS.

Under the circumstances of this case, where an arbitrator ordered the Postal Service to covert 110 HCRs to the generally more costly PVS operations, *see* AR 1581, and the Postal Service allegedly relied on its experience to identify features that make routes especially costly when performed by PVS, *see* Raney Decl. ¶¶ 13–22, AR 5011–14, the Court is not persuaded that effective judicial review requires consideration of the vast majority of the information submitted by plaintiffs regarding other cost factors. If, as a matter of law, the specific costs and performance of each individual contractor had to be considered for conversion to be proper, then the absence of such consideration is sufficient for plaintiffs' merits case. If not, there is no reason why the Postal Service's solution to the problem of assembling 110 routes in bulk to convert to PVS required intimate knowledge of the specific manner of performance for each of the roughly 14,000 postal transportation routes, *see* Raney Decl. ¶ 6, AR 5010.

The only information in the second category which the Court finds necessary for effective judicial review concerns matters within the specific knowledge and control of the Postal Service, namely the ordering of extra trips and of holds resulting in late slips. *See* 4th Mot. at 4; Pls.' Mot. for J. on Admin. R. at 28. While

the schedule information does not reflect this additional work and time, similar to the absence of PVS operations at a facility, it is information relating to management decisions of USPS itself, and is in a sense "tacit knowledge" of a "technical nature" possessed by Postal Service and contractor employees. *See E.W.*, 100 Fed. Cl. at 57. Simply put, the Court cannot determine whether these cost factors, known and under the control of the Postal Service, should have been considered in the decision under review, without this information being added to the administrative record. Accordingly, the identified portions of the following declarations shall be added to the administrative record:

- Decl. of Lori Vonwald, EFC No. 71-2, ¶¶ 19–20 (concerning HCR 926L1 and 92012).
- Supp'l Decl. of David Bachman, ECF No. 71-6, ¶¶ 3–14 (concerning HCR 331AJ, 66393, 76090, and 760M2).
- Supp'l Decl. of Frederick S. Riceputo, ECF No. 71-8, ¶¶ 4–6 (concerning HCR 331N3, 33430, and 33443).[11]
- Supp'l Decl. of Nola Holton, ECF No. 71-12, ¶¶ 9–14 (concerning HCR 890L0, 89042, 89044, and 89036).

As explained above, plaintiffs' fourth motion to supplement the administrative record is **GRANTED-IN-PART** as to the specific portions of the declarations identified in the two lists, and **DENIED-IN-PART** regarding all of the remaining requests.

## The Suggestion of Mootness

The final matter before the court at this time is the suggestion of the government that the claims of any plaintiff whose contract has expired during the pendency of this protest should be dismissed as moot. Def.'s Supp'l Br., ECF No. 115 at 3–6. But as the Court held when resolving defendant's motion to dismiss this case, plaintiffs have stated a claim within our bid protest jurisdiction by challenging the Postal Service's insourcing decision. *Mail Transportation, Inc. v. United States*, 133 Fed. Cl. 413, 415 (2017) (citing *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 370 (2012); *Elmendorf Support Servs. Joint Venture v. United States*, 105 Fed. Cl. 203, 208 (2012); *Santa Barbara Applied Research, Inc. v. United States*, 98 Fed. Cl. 536, 542–43 (2011)). The expiration of any of plaintiffs' contracts does not affect their standing to challenge an insourcing decision as a violation of 39 U.S.C. § 5005(c), since an unlawful insourcing would have deprived them of the opportunity to compete for a new contract. *See Loomacres, Inc. v. United States*, 134 Fed. Cl. 779, 782–83 (2017). Nor would the expiration of any contract eliminate

---

[11] The Court is referring to the first paragraph of this declaration given the number four.

the possibility of an effective remedy were plaintiffs to prevail in their protest, such as an order requiring the Postal Service to reconsider the conversion of their routes to PVS using a process which complies with 39 U.S.C. § 5005(c). This case is not brought to enforce the rights plaintiffs have under their contracts, but rather to protest a Postal Service decision which allegedly violated a statute which applies whenever USPS is "determining whether to obtain transportation of mail by contract . . . or by Government motor vehicle." 39 U.S.C. § 5005(c). The matter is not moot.

## Supplemental Briefs to Address the Additional Materials

Because of the supplementation of the administrative record, adding materials which plaintiffs had previously discussed in their merits briefing, *see, e.g.*, Pls.' Mot. for J. on Admin. R. at 27–29, the Court will require additional briefing to address the significance, if any, of the added materials. The government and intervenor shall each file a supplemental brief on or by **Thursday, April 15, 2021**, addressing this supplemental information. Plaintiffs shall file a supplemental brief in response on or by **Thursday, April 29, 2021**. The Court will then consider the matter submitted for decision.

For the foregoing reasons, plaintiffs' second and third motions to supplement the administrative record, ECF Nos. 81 and 92, are **DENIED**, and plaintiffs' fourth motion to supplement the administrative record, ECF No. 104, is **GRANTED-IN-PART** and **DENIED-IN-PART.**

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Senior Judge