Mary V. SIEBEN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–878C

United States Court of Federal Claims.

(Filed: December 13, 2012)

**4**

Mary V. Sieben, Hastings, MN, pro se.

Joshua A. Mandlebaum, U.S. DOJ-Civil Division Washington, DC, for Defendant.

Military Pay; 10 U.S.C. § 1201; Motion to Supplement the Administrative Record

*OPINION AND ORDER*

EDWARD J. DAMICH, Judge.

Pending before the Court is a motion filed by Plaintiff, Mary Sieben ("Sieben"), *pro se*,[1] requesting leave to supplement the administrative record ("AR") in this military pay case. Sieben's motion was filed on September 19, 2012. The Government responded on October 9, 2012. For the reasons that follow, Sieben's motion is GRANTED, in part, and DENIED, in part.

## I. Background

### a. Allegations

This is a military disability and retirement pay and benefits case brought by Sieben against the United States. Although a full recitation of the facts is not necessary at this

juncture, a brief summary of the facts alleged in this case will shed some light on the pending motion.

Sieben's military career spans more than 27 years in the Air Force, Air Force Reserve, and Air National Guard. Toward the end of this career, in late 2004, she was assigned to Baghdad with the Army. Sieben alleges that, while in Iraq, she sustained numerous physical and mental or emotional injuries. These injuries led to Sieben being examined by the Physical Examination Board ("PEB"),[2] who placed her on the temporary disability retirement list ("TDRL") on March 16, 2006 with an initial rating of 100% disabled.[3] The PEB's findings were directed towards Sieben's back issues, and it reached no conclusions as to any alleged mental condition.

The nature of the TDRL is such that Sieben's condition was reviewed on occasion. In May of 2008, she underwent a TDRL examination and in July of that year, she was again given a rating of 100% disabled. She underwent another TDRL examination in late 2009, and in January of 2010, she was given a 10% disability rating based on her chronic lower back pain and spinal issues. The PEB also recommended that Sieben be separated from service because her back condition left her unfit for continued military service.

Sieben challenged the PEB's findings with the Secretary of the Air Force ("SAF"). In reaching its conclusion, the SAF considered both Sieben's physical and mental conditions. The SAF rejected modification of Sieben's disability rating based on her alleged mental condition, finding that the evidence showed that Sieben's condition was controlled with "good results" by medication and that there was no evidence that this condition was unfitting at the time Sieben was placed on the TDRL. *See* Department of Defense Instruction ("DoDI") 1332.38 ¶ E3.P6.2.4 (requiring

---

1. Although Sieben brings this suit *pro se*, she is an experienced lawyer.

2. The PEB is convened in two forms. The first is the informal PEB ("IPEB"). If a service member is unhappy with the result reached by the I PEB, she may request a formal PEB ("FPEB"), which includes a hearing.

3. An active duty service member may be placed on the TDRL when that member is rendered unfit for service due to a condition that is not "of a permanent nature and stable." Dept. of Def. Instruction ("DoDI") 1332.38 at ¶ E3.P6.1. Such a condition is one that will change enough in the next five years to warrant a change of the disability rating or finding of fitness. *Id.* at ¶ E3.P6.1.1.

a showing that a condition diagnosed while on the TDRL either be unfitting at the time the member was placed on the TDRL, or be unfitting and caused by the condition which led to TDRL placement). The SAF did conclude, however, that Sieben's back condition merited a rating of 20% instead of the 10% initially assigned by the PEB. Still, the back condition limited Sieben's deployability, rendering her unfit for continued military service. The SA F therefore concurred with the PEB's finding that separation was appropriate.

In her single-count Complaint, Sieben alleges that the Air Force acted arbitrarily or in bad faith when it concluded that she was only entitled to a 20% disability rating. Sieben claims that she was entitled to a higher rating based on both her physical and mental conditions. Sieben asserts that the Air Force's assignment of a 20% rating has deprived her of both retirement pay and benefits to which she is entitled.

### b. Procedural History

The Government, in response to Sieben's Complaint, filed a motion for partial dismissal and for judgment upon the A R. The Government's argument for partial dismissal was directed at what the Government read as a wrongful separation claim, while its arguments for judgment upon the AR would be fully dispositive, if accepted.

In her response to the Government's motion, Sieben raised a number of arguments which are irrelevant to the pending motion. Two points are pertinent here, however. First, Sieben denied any intent to raise a wrongful separation claim; consequently, the Court denied-as-moot the Government's motion for partial dismissal, leaving only the Government's motion for judgment on the AR pending.

Second, Sieben asserted that the AR filed with the Court was incomplete, and that the missing documents were material to her case. In light of her representations, the Court stayed briefing on the cross-motions for judgment on the A R, and instead ordered that, by September 24, 2012, Sieben should file either a motion to supplement the AR or a notice stating that such motion would not be filed. Prior to the Court's stay on brief-

ing, Sieben filed her cross-motion for judgment on the A R.

In accord with the Court's order, Sieben filed the instant motion on September 19, 2012. In her motion, she initially requests that the Court strike Exhibits 1–12 to her cross-motion for judgment on the AR. Those exhibits are identical to exhibits 1–12 attached to the pending motion, save that the exhibits attached to the instant motion are properly redacted while the cross-motion exhibits are not. The Court will grant Sieben's motion to strike without further analysis.

Sieben's motion also requests leave to supplement the AR with thirteen exhibits—the first twelve of which match the twelve exhibits just stricken, except for redactions, and the thirteenth of which was first produced with the instant motion. The content of each exhibit is discussed below.

### II. Legal Standard

### a. Review of a Military Pay Decision

Although the Court is not in a position to decide the merits of Sieben's case at this point in time, it is useful to review the standards she must ultimately satisfy. As this Court has recognized before, in its review of the Air Force's findings, it does not sit as a "super correction board," but it is instead required to give substantial deference to those findings. *See Chapman v. United States*, 92 Fed.Cl. 570, 577 (2010) (citing *Skinner v. United States*, 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979); *Van Cleave v. United States*, 70 Fed.Cl. 674, 678 (2006)). The Court is not called upon to reweigh the evidence, but instead to determine "whether the *conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed.Cir.1983) (emphasis in original).

The burden is on the plaintiff to show that the military's decision is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed.Cir. 2010). In order to prevail, a plaintiff must overcome "the strong, but rebuttable, presumption that administrators of the military,

like other public officers, discharge their duties correctly, lawfully, and in good faith." *Doe v. United States*, 132 F.3d 1430, 1434 (Fed.Cir.1997).

■ To the extent that a service member challenges the Air Force's disability rating based on a condition that was diagnosed during the member's placement on the TDRL, the member has the additional burden of showing one of two things. The member must either demonstrate that the newly-diagnosed condition was unfitting at the time the member was placed on the TD RL or that the condition is directly related to the condition for which the member was placed on the TDRL in the first instance. DoDI 1332.38 ¶ E3.P6.2.4.

### b. Supplementing the Administrative Record

■ Although the Federal Circuit has recognized the need for an adequate record for judicial review, the parties are limited in their ability to supplement the AR. As the Supreme Court stated long ago, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). The reviewing court has the duty to apply the proper standard of review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, to the agency decision based on the record which is presented to the reviewing court by the agency. *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1379 (Fed.Cir.2009) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). Judicial review is limited thusly for the purpose of guarding against use of new evidence to "convert the 'arbitrary and capricious' standard into effectively de novo review." *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed.Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed.Cir.2005)).

■ Supplementation of the record is therefore limited to cases in which "the omission of extra-record evidence precludes effective judicial review." *Id.* (citing *Murakami*, 46 Fed.Cl. at 735). As this Court has recognized, judicial review is ineffective in instances where the evidence was unavailable below, or where a plaintiff has made a strong showing of bad faith or improper behavior which creates serious doubts about the integrity of the administrative action. *Bateson v. United States*, 48 Fed.Cl. 162, 165 (2000).

### III. Analysis

With the foregoing in mind, the Court's ultimate responsibility in this case is to determine whether Sieben can demonstrate that the 20% disability rating assigned to her by the Air Force is arbitrary, capricious, contrary to law, unsupported by the evidence (from the AR), or otherwise reached in bad faith. Given the tenor of Sieben's briefing as to the pending motion and her cross-motion for judgment, it is clear that Sieben believes that the Air Force erred either because its findings are not supported by the evidence or because it affirmatively acted in bad faith. The Court therefore looks to these issues in analyzing whether the omission of any of Sieben's exhibits would "preclude effective judicial review." *Axiom*, 564 F.3d at 1380. In accord with *Axiom*, the Court finds that only Exhibit 6 will promote effective review of Sieben's case. Sieben will, therefore, be allowed to supplement the AR with Exhibit 6, but her motion will be denied as to all other exhibits.

### a. Exhibit 1

■ Exhibit 1 is an Affidavit signed and initially submitted by Sieben in support of her cross-motion for judgment on the A R. It asserts that all documents submitted are true and accurate, that all exhibits are true and accurate records that were either submitted to the Air Force or that Sieben maintained in her own medical record, with the exception of Exhibit 4. It also describes the circumstances surrounding the production of Exhibit 7—the transcript of the FPEB hearing produced by Sieben's daughter, who "is in Korea and is unable to notarize the transcript." Finally, Exhibit 1 describes Sieben's frustration with the attorney provided to her by the Government to assist her as the PEB.

It appears to the Court that this exhibit is entirely unnecessary for effective review.

Although it is submitted in the guise of a statement of facts, Exhibit 1 serves only to swear to the truthfulness or authenticity of the other exhibits at issue in this motion, and to make what amounts to a legal argument regarding the attorney. Nothing contained in the exhibit is necessary for effective review of the Air Force's decision.

### b. Exhibit 2

■ Exhibit 2 is offered to show that Sieben never had the requisite Medical Evaluation Board ("MEB")[4] exam that would have identified all of her potentially unfitting conditions, especially her alleged post-traumatic stress disorder ("PTSD") or traumatic brain injury ("TBI").[5] Sieben also claims that these records show that the subjective medical evidence is not reliable, citing inconsistencies such as a reference to her injury occurring in Afghanistan rather than Iraq.

The relevance of Exhibit 2 to Sieben's case is limited by DoDI 1332.38 ¶ E3.P6.2.4, as that Instruction requires that Sieben demonstrate either that her PTSD be unfitting at the time she was placed on the TDRL, or directly related to the condition which resulted in her placement on the TDRL. Nothing in the Exhibit ties Sieben's PTSD to her back condition, nor do the records in Exhibit 2 show that Sieben's PTSD would have been unfitting at the time she was placed on the TDRL in March of 2006. Exhibit 2 is unnecessary for effective review.

### c. Exhibit 3

■ Sieben offers Exhibit 3, a January 29, 2008 civilian patient note, to prove that she is "hypermobile," a condition which she claims "makes [her] case not one of typical low back pain, but one where rehabilitation is 'a lifelong pursuit for her.'" That is the extent of Sieben's argument on Exhibit 3— she has offered no authority in support of her position, nor has the Court found any authority to support her bald assertion.

Notably, Sieben's May 22, 2008 TDRL exam report directly contradicts Exhibit 3, as the TDRL reports no significant hypermobility. *See* AR at 641. Regardless, even if the Court accepted Sieben's assertion, the ratings provided in Veterans Administration Schedule for Rating Disabilities ("VASRD") do not provide for a rating greater than 20% for Sieben's back condition—and certainly not on the basis of hypermobility alone. *See* 38 C.F.R.§ 4.71 a, The Spine. Thus, even if the Court accepted Exhibit 3 into the record and accepted it as a basis for finding hypermobility, it would show no error in the outcome of the Air Force's ratings analysis. It is, therefore, unnecessary for effective review.

### d. Exhibit 4

■ Exhibit 4 is a series of PTSD counseling records. Specifically, the Exhibit comprises an intake record from July 15, 2005, and three follow-ups, dated July 25, August 1, and August 15, 2005. According to Sieben, Exhibit 4 demonstrates that the Air Force acted in bad faith when it failed to examine her for PTSD during her TDRL exams, even though it was aware of her condition. She implies that the SAF's recognition that the available documentation did not show her PTSD, combined with its failure to provide her an opportunity to present such documentation, proves the Air Force's bad faith. She does not expressly state so, but given her position that these records refute the SAF's findings, it also appears that she believes these documents speak to the question of whether her PTSD was unfitting at the time she was placed on the TDRL.

In fact, the Court views Exhibit 4 as supporting the conclusions reached by the Air Force in its analysis of the AR. Three of the four included records provide an assessment "[r]ul[ing] out post-traumatic stress disorder" (the August 1 record is the outlier, as it shows an assessment of post-traumatic stress

4. The MEB is a precursor to the PEB. The MEB is the first stage in determining whether a service member is fit to remain on duty. If the MEB determines that the service member is unfit, the member is referred to the PEB for further consideration.

5. For the sake of clarity in the rest of this opinion, the Court will refer to Sieben's mental con-

dition as "PTSD." This label is adopted only for simplicity, and is in no way indicative that the Court has concluded that Sieben actually has PTSD, especially in light of numerous instances in the AR which show her diagnosis as "anxiety disorder with features of PTSD."

disorder). Moreover, these documents demonstrate an evolution of Sieben's condition, beginning on July 15 and continuing through August 15, 2005. The earliest record reflects some issue of mental or emotional health, including "possibly post-traumatic stress disorder." Pltf's Ex. 4. The July 25 record reflects that Sieben has been prescribed Prozac and that she "believes she almost has some feelings of being less weepy and sensitive," and that she "thinks she is noticing progress." *Id.* The two subsequent records document further improvement, not just in Sieben's mental status but in her physical status. *Id.* ("The patient indicates that her physical health is improving, that her back is hurting much less, and she has noticed that her mood also is improving."). The final record observes "[s]ignificant improvement in the past 2 weeks. Medications seems [sic] to be kicking in and she is both thinking and functioning better." *Id.*

The steady improvement demonstrated by the records in Exhibit 4 is already well-reflected in the AR. *See* AR at 108 (recognizing PTSD symptoms, and observing that Sieben was prescribed Prozac, with good results). This portion of the AR was expressly relied upon by the SAF in its decision, which accepted the assertion that Sieben had been diagnosed with PTSD, but found that she had failed to demonstrate that the PTSD was unfitting. *See* AR at 7. Instead, the SAF relied upon the very evidence contained in Exhibit 4—Sieben's "good results" with Prozac—to suggest that her PTSD was not unfitting. Not only do these findings foreclose a finding of bad faith on behalf of the Air Force in its failure to obtain the specific records presented here, but the records actually serve to bolster the Air Force's conclusion that Sieben's mental condition was controllable with medication. Because Exhibit 4 fails to show bad faith or to prove that Sieben's PTSD was unfitting, it is not necessary for effective review.

### e. Exhibit 5

█ Sieben claims that Exhibit 5, her 2007 Work Rehabilitation Testing report, was previously part of the AR. Sieben argues that this Exhibit "documents her unemployability and [her] seventh grade reading level." She

claims that her 100% disability rating was maintained in 2008 due, in part, to this record. Sieben's position with respect to Exhibit 5 is that it shows the arbitrary nature of the SAF's decision to rate her at 20% in 2010. This is so presumably because both her 2008 and 2010 work tests were performed by the same examiner and he reached the same conclusion of unemployability in both instances, but the Air Force rated her at 100% in 2008 and 20% in 2010.

The Government argues that Exhibit 5 is simply not relevant to the Air Force's final decision when compared with the 2010 report, which is part of the AR and which was relied upon below. It likewise argues that Sieben has mischaracterized the report—she did not have a "seventh grade reading level," but instead a total reading grade equivalent of 11.4 with a seventh grade comprehension level. The Government observes that Sieben has fixated on the seventh grade rating consistently to show a deterioration of her mental abilities. *Compare* Ex. 5 at 16 ("testing consistently where one would expect given her education and work experience"), *with,* *e.g.,* AR at 27 ("7th grade reading level"); AR at 129 (same); AR at 405 ("The member reports that ... her cognitive ability is that of a middle school student"); AR at 515–16 ("Cognitively she was the lead lawyer in trial of many complex criminal and civil lawsuits and won.... Post Iraq is far different.... Cognitive ability is of a middle-school student"); AR at 552–53 (same). Thus, the Government argues, Sieben has been misrepresenting the examiner's conclusions and, if anything, Exhibit 5 supports the Government's position.

Entirely aside from her mischaracterization of what Exhibit 5 actually says, the Court does not find Exhibit 5 necessary for effective review. Exhibit 5 does not demonstrate that Sieben had any mental conditions that would render her unfit for service at the time she was placed on the TDRL. Nor does the Air Force's failure to refer to an older report—one that does not speak to Sieben's condition at the time she was placed on the TDRL or at the time she was separated—demonstrate bad faith on behalf of the Air

Force, especially as it considered a more contemporaneous report.

#### f. Exhibit 6

 Exhibit 6 is an enlarged copy of the TDRL report found at 572–73 of the AR. Sieben argues that the copy contained in the AR has been so reduced in size as to be illegible. The Government does not oppose the admission of this Exhibit. As such, the Court will grant Sieben's motion as to Exhibit 6.

#### g. Exhibit 7

 Exhibit 7 is a transcript of the 2010 formal PEB hearing evidently produced by Sieben's daughter after Sieben obtained an audio recording of the hearing. She claims that the transcript shows that the Air Force denied her a full a fair hearing by "contriv[ing] testimony to use against plaintiff, add[ing] an exhibit to the hearing record without plaintiff's knowledge or opportunity to comment, and arbitrarily ignor[ing] witness testimony." The first two complaints seem to speak to the asserted bias of the board, while the third seems to request that this Court determine, based on an uncorroborated written record, the credibility of witnesses at the board hearing. This last is inappropriate on its face. *See de Cicco v. United States,* 677 F.2d 66, 70 (Ct.Cl.1982).

As to the first of her complaints, it appears that the "contrived testimony" to which Sieben refers is a reference to a statement that she "walks on a treadmill for 30 minutes several times per week." AR at 10. Sieben never said this, but instead said that "I do 30 minutes of some kind of an aerobics [sic] during the … several times a week … if its stationary bicycle or in the water, aerobic [sic] in the water." This misstatement is not sufficiently prejudicial to Sieben's case to support her claim that the Air Force contrived testimony to use against her.

Regarding Sieben's complaint that the Air Force added an exhibit to the hearing which she was denied an opportunity to respond to, Sieben's proposed exhibit plainly shows that such is not the case. Although the Air Force *did* uncover pictures of Sieben attending a log-building school on the internet, Sieben was given an opportunity to respond:

the board "acknowledge[d] Col Sieben's testimony that she was an observer at the log building school." AR at 410. In fact, the transcript shows that both Sieben and her husband testified about their trip to the log building school. Ex. 7 at 13, 21. The Court is not persuaded that Exhibit 7 is necessary for effective review.

#### h. Exhibit 8

 Exhibit 8 is Sieben's VA ratings letter and PTSD rating from 2010. Sieben claims that the letter and rating sheet—which rates her with four Gulf War-related disabilities—shows that the Air Force failed to consider all of her potentially unfitting conditions. She also claims that the exhibit rebuts the Government's claim that she "has never been diagnosed as meeting the full criteria for PTSD by the Air Force or the VA…. Rather, the VA has diagnosed her with anxiety disorder with features of PTSD." The Court observes that the second page of Exhibit 8 is already contained in the record. *See* AR at 448.

As to her rebuttal argument, the Court simply cannot comprehend how this document rebuts the Government's position that she has only been diagnosed with "anxiety disorder with features of PTSD." Exhibit 8 *does not,* in any way, show a diagnosis of PTSD. Instead, the condition described in Exhibit 8 is just what the Government says Sieben has been diagnosed with: "Anxiety disorder with features of post traumatic stress disorder and major depression." *See* Ex. 8. Thus, Sieben's exhibit supports, rather than rebuts, the Government's position on her actual diagnosis.

With respect to Sieben's assertion that Exhibit 8 shows that the Air Force failed to consider her other allegedly unfitting conditions, that assertion stretches Exhibit 8 too far. The Air Force accepted Sieben's claim that she had PTSD, but it was unable to find that condition unfitting at the time she was placed on the TDRL. *See* AR at 7 ("The Board does not question the existence of the diagnosis of PTSD *or its connection to the member's service* …. [but] she was not unfit during this time period as well."). The Air Force clearly considered Sieben's mental

state, but was unable to make a finding of unfitness based on the evidence presented. Nor is a VA rating dispositive as to a military disability determination, such that Sieben's VA ratings would be necessary for effective review of the matter before the Court. *See Finn v. United* States, 212 Ct.Cl. 353, 548 F.2d 340, 357 (1977) ("This court has stated that although the VA's determination of a plaintiff's condition may be relevant evidence, it is in no way binding upon the court nor conclusive on the issue of disability retirement.") (internal citations omitted).

### i. Exhibit 9

Exhibit 9 is a letter from the SAF to Senator Al Franken. It informs Senator Franken that the SAF's Air Force Personnel Board (the "PB"), along with the Personnel Council, reviews PEB recommendations and may change the disposition of cases that the PB reviews. Sieben highlights the portion of the letter which states that the PB may "defer a final determination [in her case], if necessary, for further medical evaluation or until receipt of additional records or reports deemed essential to a final determination." Sieben claims that this letter is "[p]articularly troubling" because it is willfully misleading to a U.S. Senator. She claims that the letter demonstrates a clear intent not to comply with Air Force regulations.

There is nothing "particularly troubling," or even remotely troubling, about the letter. It appears that Sieben contacted a number of Senators and/or Congressmen,[6] presumably with the hope that they could push her claim through. Whatever Sieben's motivation behind contacting Senator Franken and the other unnamed Members of Congress, the letter merely explains the procedures and authority available to the SAF, but it in no way makes any representation that it *would* seek the evaluations or records about which Sieben complains. This letter is irrelevant to the case, and is therefore not necessary for effective review.

### j. Exhibit 10

Exhibit 10 comprises additional VA medical records. Sieben cites these records as evidence that, "despite [the Government's]

attempts to portray [her] as robust and healthy," she was not so healthy. As with Exhibit 3, it appears that Sieben's purpose in bringing this Exhibit is to demonstrate that her back condition was exceptional.

The Government, for its part, argues that these records do not suffice to change Sieben's rating because neither hypermobility nor a short period of incapacitation are sufficient to warrant a higher rating. The Government also provides an extended explanation of why this exhibit supports the Government's case.

As it did with Exhibit 3, the Court refers to 38 C.F.R. § 4.71 a, which provides no additional rating for hypermobility, surgery, or such short period of incapacitation as described in Exhibit 10. The Court needs not go further into the Government's argument that Exhibit 10 supports its position, because the exhibit does not demonstrate bad faith or otherwise undermine the Air Force's factual findings in the matter, and it is therefore unnecessary for effective review.

### k. Exhibit 11

Exhibit 11 is a letter which Sieben claims to have written after her 2006 FPEB hearing. Sieben only assertion is that the exhibit "supports [her] contentions that she had PTSD symptoms while on active duty." The letter makes mention of "possible PTSD," but goes no further. Nothing in the letter demonstrates that Sieben's PTSD was unfitting at the time she was placed on the TDRL. Nor does it demonstrate any bias.

### l. Exhibit 12

Exhibit 12 is a 2010 Imaging Report discussing a magnetic-resonance image ("MRI") of Sieben's brain. She cites this report as evidence of a brain injury suffered in 2004, which she claims rendered her unfit for continued service prior to her placement on the TDRL in April of 2006. She also argues that the report undermines the Government's position "that there is no 'proof' of an MRI ... suggesting that it is better

---

6. Although this particular letter is addressed to Senator Franken, the letter itself indicates that

the SAF "sent similar letters to other Members of Congress." *See* Ex. 9.

qualified to interpret MRI results than the VA's Director of Polytrauma." Mot. at 7.

Notwithstanding Sieben's mischaracterization of the Government's position on the matter of her MRI,[7] Exhibit 12 does nothing to move her case forward. The AR, via letter dated May 8, 2010, reflects a "recent" MRI, which is presumably the one described in Exhibit 12. *See* AR at 451 ("Recent MRI-lumbar spine demonstrates progression of her spinal disease and abnormalities on brain MRI support her cognitive difficulties."). As the Government observes, the May 8 letter fails to show that Sieben's brain condition or cognitive issues were unfitting in 2006, when she was placed on the TDRL. The same is true of Exhibit 12. The omission of Exhibit 12 would not render this Court's review ineffective.

### m. Exhibit 13

Exhibit 13, Sieben's DD–214 form, is a summary of her last tour of duty. She cites the document as evidence that the Government's pursuit of this litigation is made in bad faith, as the Government is now attempted to "re-litigate the 'combat-related' status" of her injuries. The Government recognizes that Sieben's back condition is combat-related, and it does not dispute the 20% rating assigned thereto.

This exhibit is entirely unnecessary for review. As the Government argues in response to Sieben's motion, it is not "re-litigat[ing]" anything, but instead opposing the issues Sieben has raised in this litigation. Indeed, the AR expressly acknowledges that Sieben's back condition is combat related. *See* AR at 6. Despite the very flowery language employed, including a citation to President Obama, Sieben has not demonstrated that Exhibit 13 is necessary for effective review in this case.

### IV. Conclusion

All said, this Court does not find that the majority of Sieben's exhibits are necessary for the Court to effectively review this case.

None of Sieben's exhibits demonstrate bad faith on behalf of the Air Force, and none show that the Air Force's ratings conclusions were unsupported by fact. However, the Court accepts Exhibit 6 as a supplement to the record because it is a more legible version of a document already contained in the AR. Thus, Sieben's motion to supplement is GRANTED, in part, to the extent that Sieben shall be allowed to supplement the record with Exhibit 6, but DENIED, in part, to the extent that no other exhibit shall be considered.

Sieben's motion is also GRANTED to the extent that she wishes to strike Exhibits 1–12 of her cross-motion, Docket No. 18. The Clerk of Court is directed to strike those exhibits from the record.

The STAY entered on briefing on the cross-motions for judgment on the administrative record is LIFTED. In order to provide the parties sufficient time to prepare their briefing, and in light of the upcoming holidays, the parties shall adhere to the following schedule for the remaining briefing:

(1) The Government's Response/Reply shall be due January 4, 2013.

(2) Plaintiff's Reply shall be due January 11, 2013.

---

7. Although Sieben claims that the Government asserts no "proof" of her MRI, the Government's actual position is quite different. The Government does not contend that there is no proof of an MRI, but instead observes that the MRI results are not contained in the AR and that the May 8, 2010 letter, found at AR 451–52, referring to the MRI fails to establish when the MRI was taken or whether it would demonstrate that Sieben's mental condition would qualify as unfitting at the time she was placed on the TDRL.