# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| SUFI Network Services, Inc. ) | ASBCA No. 55306 |
| ) | |
| Under Contract No. F41999-96-D-0057 ) | |

APPEARANCES FOR THE APPELLANT:     Frederick W. Claybrook, Jr., Esq.
Brian T. McLaughlin, Esq.
  Crowell & Moring LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:     Lt Col James H. Kennedy III, USAF
  Air Force Chief Trial Attorney
Christopher S. Cole, Esq.
Joel B. Lofgren, Esq.
Lt Col Mark E. Allen, USAF
Capt Adam N. Olsen, USAF
Capt Marc P. Mallone, USAF
Jeffrey P. Hildebrant, Esq.
Christine C. Piper, Esq.
Marvin K. Gibbs, Esq.
  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE JAMES
## ON THE PARTIES' MOTIONS FOR RECONSIDERATION

On 5 March 2015 the government moved for reconsideration[1] of the Board's 2 February 2015 decision (*SUFI Network Services, Inc.*, ASBCA No. 55306, 15-1 BCA ¶ 35,878) on remand from the U.S. Court of Federal Claims (COFC) and the U.S. Court of Appeals for the Federal Circuit (CAFC) in which we sustained the captioned appeal in the amount of $111,849,833.83 with interest thereon (in addition to the $2,790,930.17 awarded by the Board on SUFI's 16 counts not appealed to the COFC). On 31 March 2015 SUFI opposed respondent's motion and cross-moved for reconsideration on Count XVI only. On 30 April 2015 respondent replied to SUFI's opposition and stated that it had no objection to SUFI's cross-motion for

---

[1] The government has also requested that the Chairman refer its motion to the Board's Senior Deciding Group. *See* ASBCA Charter ¶ 4, 48 C.F.R. chap. 2, app'x A, pt. 1 and Board Rules, preface II(c), 48 C.F.R. chap. 2, app'x A, pt. 2. SUFI opposes the request. The request has been denied.

reconsideration.[2] Familiarity with all SUFI decisions by the Board, COFC and CAFC is assumed.[3]

I.

Respondent asserts generally that the Board's 2 February 2015 decision failed to comply with the CAFC's mandate, found facts that were arbitrary, capricious and unsupported by substantial evidence, and made substantial errors of law. Respondent moves to "correct" our decision with respect to SUFI Counts III, XVI, V, VII, XVIII and IV (gov't mot. at ii, 3, 29, 31, 38, 40-41). SUFI opposes that motion generally on the ground that it re-argues its previous positions on which it did not prevail, or which it could have raised, but failed to raise (app. opp'n at 4-5). We decide the specific issues in each SUFI count in the order raised by respondent's motion (gov't mot. at 3-41).

Count III. Respondent argues that the Board cited no evidence or findings of fact that there were "missing government DSN call records" that it withheld or destroyed, which negates the adverse inference drawn against it on Count III damages (gov't mot. at 4; gov't reply br. at 1-2). Respondent ignores *SUFI VIII*, finding 109(b): "respondent's call records for hallway/lobby DSN phones were incomplete…. DISA call records lacked local base operator and commercial calls, were collected on a best efforts basis, had data gaps due to transmission and processing outages" and finding 116: DISA call records "generally had days, months and years of lost data due to discarded, corrupted data for 1996-2000 and a PC crash in 2003." 09-1 BCA ¶ 34,018 at 168,238, 168,240. Because the DISA DSN call data had gaps due to transmission and processing outages, discarded and corrupted data and a 2003 PC crash, it inescapably follows that such lost call data were "missing government DSN call records" (gov't mot. at 4; gov't reply br. at 1-2).

With respect to the government's duty to preserve hallway/lobby DSN call data records, the guest lodging hallway/lobby DSN phones lacked adequate controls to block "fraud and toll skipping," SUFI notified the government of its duty to remove hallway/lobby DSN phones from guest lodgings as early as mid-December 1996, and in 1997 the government began changing the hallway/lobby DSN phones from local to worldwide service, thus enabling fraud and toll skipping by lodging guests. *SUFI VIII*, 09-1 BCA ¶ 34,018 at 168,235-36, findings 84, 87, 91, 93. Thus, by no later than 1997, the government was on notice of the duty to preserve such call records.

---

[2] The parties' reconsideration filings comprise over 600 pages without attachments or appendices.

[3] Judge Monroe E. Freeman, Jr., who participated in the decision to be reconsidered, has since retired.

The CAFC's remand stated on Count III: "the Board failed to consider whether an adverse inference should be drawn against the government on the issue of the missing call records...even though it was on notice of this potential contract dispute." *SUFI XVI*, 755 F.3d 1305 at 1315. On remand, the Board considered findings 84, 87, 91, 93 and drew the adverse inference that the missing DISA call record evidence does not support the government's defenses to Count III damages derived from SUFI's surrogate phone X.4619 call data. Proof of intentional destruction of evidence or wrongdoing is not needed to draw such adverse inference. *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 263-66 (1946) (revenue loss from imprecise data was acceptable; no evidence of destruction of evidence). In this case, that adverse inference and our retraction of the *SUFI VIII* "official calls" misinterpretation of the contract terms specifying SUFI's earned revenues, supported our holding that SUFI's surrogate phone X.4619 call data evidence was a reasonable estimate of Count III damages and our rejection of the government's "real-world record facts" which do not support its theories of discounted damages and revenue comparisons. *SUFI XVII*, 15-1 BCA ¶ 35,878 at 175,396-97. Thus, we need not decide the issue of government waiver of such damage theories (app. opp'n at 5, 7; gov't reply br. at 6-9). Our foregoing adverse inference did not dispense with SUFI's burden of proof of damages as respondent asserts (gov't reply br. at 11-12).

With respect to the foreseeability of Count III hallway/lobby DSN phone abuse damages, the CAFC's stated criterion is: "SUFI must prove...that...the loss was foreseeable...*at the time of contracting*." *SUFI XVI*, 755 F.3d at 1312-13 (emphasis added). SUFI offered DSN network service to the Air Force subject to the condition, "once adequate controls are developed with safeguards against fraud and toll skipping." *SUFI VIII*, 09-1 BCA ¶ 34,018 at 168,235, finding 84. During the pre-award site survey, the COTR told SUFI that government hallway/lobby DSN phones were "Class C" local. *Id*. at 168,235, finding 87. Contract section E-2 required the government to remove or make non-operational the hallway/lobby DSN phones. *Id*. at 168,235-36, 168,241, findings 89-90. These facts gave the government pre-award notice of foreseeable lost revenues due to toll skipping, including via hallway/lobby DSN phones.

Respondent's arguments about the foreseeability of lodging phone usage fluctuations due to "(1) [the 1997 to 2000] de-regulation of the telecommunications industry, and (2) the terrorist strikes in the U.S. on September 11, 2001, and the ensuing wars in Iraq and Afghanistan" (gov't mot. at 20-21), involve post-award events. Pursuant to the CAFC's above-quoted criterion, post-award factors are immaterial to foreseeability and were a sound basis for the Board's declining to take judicial notice, and excluding respondent's immaterial evidence, of phone use fluctuations. Respondent's arguments to measure Count III damages by its "before/after studies" repeat prior arguments (gov't br. (*SUFI VIII*) at 136-37; gov't remand br. at 13, 15-50; gov't reply br. at 9-15) that we rejected, and hence do not

3

qualify for reconsideration. *See SUFI X*, 10-1 BCA ¶ 34,327 at 169,533 and decisions cited therein.

In conclusion, having reconsidered our decision on Count III, we affirm it.

Count XVI. The CAFC remanded Count XVI for the Board to recalculate lost profits on the basis of a term of 15 years from the date of completion and acceptance of the telephone system at each site. *SUFI XVI*, 755 F.3d at 1322. Respondent argues that the Board erred in deciding that the contract-specified 15-year performance periods began upon "acceptance" of SUFI's LFTS at each site, rather than adopting its argument that such period began at "cut-over," and modifying SUFI's 3-year period to determine its average annual revenues (gov't mot. at 29-31; gov't reply br. at 17-18).

With respect to the start date for the 15-year period, respondent's argument for reconsideration repeats its previous arguments on remand (gov't remand br. at 89-97). As cited in appellant's opposition at 5: "A motion for reconsideration that restates arguments previously raised and considered by the Board will be denied." *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 57530, 58161, 13 BCA ¶ 35,379 at 173,602. Moreover, as stated in our decision on remand, the CAFC panel affirmed the COFC's "conclusion that SUFI's post-termination lost profits should be calculated for a term of fifteen years from the date of completion and acceptance of the telephone system at each site" as specified in contract section H.29. *SUFI XVI*, 755 F.3d at 1322. Thus "[w]e are not free to disregard the CAFC panel's unambiguous holding that the 15-year term commenced 'from the date of completion and acceptance' of the LFTS." 15-1 BCA ¶ 35,878 at 175,403. Respondent's ground for reconsideration is invalid.

With respect to SUFI's revenue averaging period, the COFC erroneously stated: "Neither the DCAA nor the Air Force challenged the use of this [January 2002 through May 2005] averaging period." *SUFI XIV*, 108 Fed. Cl. 287 at 320. Respondent challenged that period of use before the COFC in May 2012 (gov't reply br., attach. 1 at 88-90). However, the CAFC did not remand the revenue averaging period to the Board for further consideration. *SUFI XVI*, 755 F.3d at 1321-23. Thus, the Board's 2 February 2015 decision did not violate the CAFC's remand, foreclosing this ground for reconsideration.

Having reconsidered our decision on Count XVI, we affirm it.

Count V. Respondent argues that supplemental finding S12 (15-1 BCA ¶ 35,878 at 175,398): (1) does not identify any facts that support the adverse inference drawn against the Air Force for its failure to produce government call records, because witness Margarito Castanon's testimony (tr. 18/138-40) cited in finding S12 does not address calls from the 34 indirect local numbers patched to long distance commercial

4

numbers for toll skipping, nor does it describe any government wrongdoing "that the Air Force intentionally, willfully, or through gross negligence destroyed the [call data]" or acted improperly, and Mr. Castanon's other testimony (tr. 18/6-9) contradicts the Board's conclusion that the government failed to produce the pertinent call data records; and (2) is inconsistent with the Board's 19 September 2006 ruling on SUFI's motion to compel (ex. B169 at 2), that the documents respondent produced under SUFI's specifications 1 and 8 for all documents related to SUFI's Count V claim were adequate (gov't mot. at 31-38; gov't reply br. at 15).

The context in which Mr. Castanon described USAFE's limited call data records – due to their loss from its PC (computer) that sent call data to DISA in Europe and in USA (tr. 18/25-27) – was the attempt of a lodging guest to dial a local DSN number for command post patching of the call to a CONUS commercial number (tr. 18/137-39). This is the factual predicate of SUFI's Count V, Other Operator Numbers Patching claim. Such limited DISA call data identified the local and long distance DSN numbers by which the call was patched to a commercial number. That lost DISA call data, together with the unopposed evidence of lodging front desk personnel providing guests with phone numbers to circumvent the SUFI system, (*SUFI VIII*, 09-1 BCA ¶ 34,018 at 168,250-51, findings 154-61), amply supported the adverse inference we drew against respondent in our decision on remand on Count V. 15-1 BCA ¶ 35,878 at 175,398.

Mistaken deletion and inadvertent loss of DISA call data are sufficient proof of failure to discharge a legal duty. Intentional, willful, or grossly negligent destruction or spoliation of evidence is not the criterion for wrongdoing supporting a *Bigelow* adverse inference. Mr. Castanon's testimony that DISA call data were missing due to a late 2003 hard drive crash, corrupted 1996-1999 data and mistaken deletion of 2005 data (tr. 18/6-11), addressed specific documents (ex. B-98; supp. R4, tab 326.1), all of which related to SUFI's Count III, hallway/lobby DSN telephone numbers (R4, tab 80A at 1724). Mr. Castanon's foregoing testimony was consistent with his testimony about Count V (tr. 18/137-39), and indicates that lost DISA call data affected both the Count III and Count V claims. *See* our ruling on reconsideration of Count III, above.

Respondent's 8 September 2006 opposition to SUFI's 9 August 2006 motion to compel stated:

> SUFI's motion alleges that the Government did not provide complete answers to its interrogatories and production requests. The Government attorney answered the interrogatories with information available on the date it submitted its responses. The Government has requested the individuals providing the factual responses to search

for additional information. The Government intends to
amend its responses if additional information is available.

(Gov't opp'n dtd. 8 September 2006 at 2) In that context, the Board's 19 September 2006 ruling that respondent's document production was "adequate" meant no more than it had produced the documents it had to SUFI. Respondent did not identify the extent of DISA call data produced to SUFI. The ruling did not state or infer that there were no missing DISA call data.

The foregoing analyses confirm our holding that our adverse inference overcame the "evidentiary lacuna" that patched calls were not made to local commercial numbers. Thus, there is no correction required for our findings and legal analysis in our Count V decision on remand. However, we clarify supplemental finding S12 (15-1 BCA ¶ 35,878 at 175,398) as follows:

> S12. The government did not produce any DISA call data with respect to SUFI's Count V, Other Operator Numbers and Patching, that could have confirmed whether calls by lodging guests were patched to the operator for long distance toll-skipping, because such data were lost or missing due to the late 2003 hard drive crash, corrupted 1996-1999 data and mistakenly deleted 2005 data (tr. 17/285-86, 18/6-9, 25-27, 137-39).

Likewise, we clarify the second sentence in the second paragraph under "DECISION ON COUNT V" (15-1 BCA ¶ 35,878 at 175,398) to state as follows:

> The government did not produce any DISA call data with respect to Count V, Other Operator Numbers and Patching, that could have confirmed whether calls by lodging guests were patched to the operator for long distance toll-skipping, because such data were lost or missing due to the late 2003 hard drive crash, corrupted 1996-1999 data and mistakenly deleted 2005 data (finding S12).

To the extent of the foregoing clarifications, we grant respondent's motion for reconsideration of our Count V decision.

Count VII. Respondent argues that the Board must rescind its ruling on Count VII and "make [the required] factual finding...whether the two DSN telephones [installed by SUFI] were the only administrative telephones available to the Delta Squadron to conduct its daily business" in the administrative area of the Delta Squadron Day Room, which "would have undermined the Delta Squadron's ability to

perform official business, unless the telephones were replaced" (gov't mot. at 38-39). SUFI contends that SUFI installed the two DSN phones in the "lounge" area of the Day Room, not the administrative area (app. opp'n at 13).

In February-June 2003, about three years after the government had removed five or six DSN phones from the Day Room and SUFI had installed two DSN phones there (*SUFI VIII*, 09-1 BCA ¶ 34,018 at 168,259, finding 202), Delta Squadron administrative personnel had available and used for official business three government DSN phones in the administrative area of the Day Room (tr. 10/143, 152, 168-69; supp. R4, tab 157 at 24, 32). Hence, to our decision on remand we add supplemental finding S25, following supplemental finding S24 (15-1 BCA ¶ 35,878 at 175,401):

> S25. In February-June 2003, about three years after the government had removed five or six DSN phones from the Day Room and SUFI had installed two DSN phones there (*SUFI VIII*, 09-1 BCA ¶ 34,018 at 168,259, finding 202), Delta Squadron administrative personnel had available and used for official business three government DSN phones in the administrative area of the Day Room (tr. 10/143, 152, 168-69; supp. R4, tab 157 at 24, 32).

Respondent's assertion that the Board failed to make the factual findings on Count VII required by the CAFC is invalid. Thus, there is no basis to rescind the holding in our Count VII decision. However, for clarification, we add finding S25 thereto, as set forth above. To the extent of the foregoing clarification, we grant respondent's motion for reconsideration of our Count VII decision.

Count XVIII. Respondent argues that the Board's statement that on Count XVIII, "the parties agree within one penny of the amount to be awarded to SUFI," (15-1 BCA ¶ 35,878 at 175,405), is mistaken because for Count XVIII respondent proposed $178,265.87, not the $209,351.16 claimed by SUFI (gov't mot. at 40), and awarded by the Board on remand. 15-1 BCA ¶ 35,878 at 175,405.

SUFI argues that respondent tacitly admitted that if two errors in respondent's calculations– *viz.*, double-counting the $22,129.36 in extra work previously granted by the Board and failing to include 202 hours of extra work performed by Ms. Ansola at the corrected hourly rate of $37.26, plus 10% profit as ordered by the CAFC remand, (*SUFI IX*, 09-2 BCA ¶ 34,201 at 169,094) – are corrected, the parties' computations do not differ (app. remand reply br. at 56-58).

Respondent rejoins that "the court" never found that SUFI was entitled to the 202 additional hours SUFI claimed for Ms. Ansola's extra work (gov't remand reply br. at 83). While the COFC made no findings about extra work hours (108 Fed. Cl.

7

287 at 311-12), the Board found that Ms. Ansola's 200 additional hours were included in SUFI's 13 February 2007 updated claim, (*SUFI VIII*, 09-1 BCA ¶ 34,018 at 168,230, finding 72), and we have verified that by clerical error Ms. Ansola's 2 hours of extra work on 22 August 2002 were omitted from SUFI's Count XVIII claim (ex. B205, tab 19A at 463, 471; app. remand reply br. at 57 n.19). Therefore, respondent's calculation of Count XVIII damages required corrections, as SUFI demonstrated, and SUFI's calculation of $209,351.16 (app. remand reply br. at 58) is correct. Having reconsidered our decision on Count XVIII, it is affirmed.

Count IV. Respondent argues that awarding SUFI lost revenues on Count XI German Troops Housing at Sembach Building 212 would duplicate the lost revenues awarded on Count IV, A&B Bed Switch, Use of Pins and LTS Switch at Spangdahlem, Rhein Main, Ramstein, Vogelweh and Landstuhl base lodgings (gov't mot. at 40-41). Our 2 February 2015 decision correctly determined that there was no duplication of recovery with respect to Counts IV and XI. *See* 15-1 BCA ¶ 35,878 at 175,402-03. Respondent's motion for reconsideration repeats the same argument asserted in its remand brief (at 88). *See id.* at 175,402. Accordingly, respondent's argument is not a basis for reconsideration. *See SUFI X*, 10-1 BCA ¶ 34,327 at 169,533 and decisions cited therein. Having reconsidered our decision on Count IV, it is affirmed.

## II.

On 31 March 2015 SUFI moved for reconsideration of the Board's 2 February 2015 decision on Count XVI lost revenues, seeking a $1,404,665.10 increase of the amount awarded. The government's 30 April 2015 response to that motion stated: "The Respondent has no objection to the proposed calculation adjustments contained in Appellant's Motion for Reconsideration to Correct Calculation of Lost Profits Amount." Accordingly, we grant SUFI's motion and award $57,175.117.10 for Count XVI damages, a $1,404,665.10 increase of the amount awarded in our 2 February 2015 decision.

## CONCLUSION

We deny respondent's motion for reconsideration, except for the clarification of supplemental finding S12 and the second sentence in the second paragraph under our "DECISION ON COUNT V," and the addition of supplemental finding S25 in our ruling on Count VII. We grant SUFI's motion for reconsideration and award

$57,175,117.10 in Count XVI damages, a $1,404,665.10 increase of the amount awarded in our 2 February 2015 decision on remand. SUFI is entitled to interest on this revised amount for Count XVI at the Federal Reserve Board monthly prime rate, as held in our remand decision. *See* 15-1 BCA ¶ 35,878 at 175,405.

Dated: 20 May 2015

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 55306, Appeal of SUFI Network Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals